I ask the clerk to call the next witness. It's number 7-2010. It's over. And that's Bowman. I think the both of you were here when we had our little orientation statement earlier. Well, I think you know that it's 15 minutes per side as a matter of entitlement unless we let you go on longer, which is, if you know anything about our division, quite likely. But don't simply assume it, nor would I think in any event that you would ever abuse it. With that, will the two of you please step up and identify yourselves for the record, and the appellate may then proceed with the hearing. My name is Marcia Jacobs. I'm an assistant state's attorney representing the people of the state of Illinois. And I'm Christopher Kopev, representing the defendant, Kendall Bowman. Good morning. Good morning. You may proceed when ready. May it please the court, we raised three issues in our brief in this case, and today I'd like to focus on the first two issues, the jail attire and the self-defense evidence issue, by welcoming questions on the third issue as well. And I'd also like to save at least three minutes or so for rebuttals. In addition to sledge, have you ever found any cases in Illinois that adjudicate the right of witnesses to be allowed to address civilians rather than as prison inmates? Sledge is the only case that I've found, and that the state's attorney has found, that even touches on this issue. Sledge only addresses it in one line, and it refers to it as jail. Whatever happened to the United States Supreme Court's decision in People v. Alford, which I remember from my law school evidence class. In People v. Alford, you're allowed to cross-examine a prisoner by asking him where he resides, to basically portray the witness in his community or in his communal environment. So if he's in jail, having that factor disclosed to a jury seems at least under, I think Harold and Stone was the justice who wrote that decision, was perfectly proper. And this would be much different, because unlike the situation where you simply just ask a witness where he resides, you have a witness who's testifying, and for the duration of his testimony, he's wearing jail attire. It's marked as jail attire. And so his whole testimony is reminding the jury persistently of his address. Correct. And it's a constant attack on his credibility. It diminishes his credibility throughout his entire testimony in a way that's really impermissible and unfair. Was the trial judge bound to follow the only case that was pending, or binding rather at that time? Was she obligated to follow Sledge? No. Why not? Why wasn't she bound to follow that case? Sledge only discussed a state witness who was seen in his jail attire. What difference would that make? A witness is a witness. Well, the defense witness has the due process right here. Sure. But does he have a due process right to have his witness out of jail, Garvin? Now, that question has never been decided. It's in the United States Supreme Court and not in Illinois. Right. As I pointed out in the brief, an overwhelming majority of jurisdictions have addressed this issue and said that, yes, it is a due process violation. For a defendant, his right to present to defense, his due process right not to have a witness be compelled. How do you confer with the case that Justice Gordon has pointed out to you? Again, the fact that he's clothed throughout his entire testimony. Well, once they've heard he's in jail, do you think they're going to forget that, that his residence is jail? No. Well, it's just one question as opposed to, again, the visual image. Sort of similar to the way the U.S. Supreme Court said that a defendant can't be forced to stand trial while wearing jail attire, because it undermines the presumption of innocence. Yeah, but the presumption, that's precisely what I was going to ask you about. When you're dealing with the Estelle case and where the Supreme Court found that it's a due process violation to require the defendant to appear in shackles or in prison, Garvin, that's because he was fighting for his presumption of innocence. Since when is a witness fighting for a presumption of innocence? Why does he care? He's not on trial. Well, the defense certainly cares. Why? They're going to claim that they're entitled to have the witness's presumption of innocence remain as a constitutional requirement, that they have a constitutional right to have the witness presumed to be innocent. I think that argument is standing on its ear, frankly. Again, a number of courts outside of Illinois have agreed to the proposition that it does have an effect on his credibility. Okay, that's a whole other story. But to give him a constitutional dimension seems to be very far-fetched, because he's not on trial. No, but the defense is being compelled to have its witness. On the other hand, the defense is not entitled to have his imprisonment kept secret because of the very case that we just discussed, the Elford case, nor do any of the others. Even in your briefs you can see that point. What you say instead in the briefs is that he got away with it. Here, nobody asked him about his imprisonment or where he lived, and he would have gotten away with it but for his gunner. Did it ever occur to you that the prosecutor may not have felt necessary to ask him about where he lived, since he was already in his orange uniform? Right, and the prosecutor already got away with it. How did his conviction come out? His conviction came out? The witness. The witness had a conviction, true? Yes. How did that come out? I believe it came out in direct examination. So the defense brought it out? I believe so. And did they bring out any more details than that he has a possession charge? No, they did not. Okay. So for all we know, that's what he was saying. His possession charge could have been why he was in the jail guard. Correct. Or it could have reflected a pending charge that he had that we know from the record. It's subject to a harmless error analysis, is it not? Yes. Even if a defendant is cloaked in his jail garb. Yes. And again, as we pointed out in the brief, it would be a state burden to prove that it was harmless beyond a reasonable doubt. Yes. Yes. And they argued the evidence was overwhelming, and you say it wasn't. And you say it wasn't because two witnesses testified that there was some evidence of self-defense, and then the victim, who was actually struck by the bullets, she testified that no one else was out there. Correct. And the two witnesses, well, the defendant and his witness, had conflicting versions of what happened, did they not? Somewhat conflicting, but primarily consistent. Well, didn't the witness say that the defendant had the gun in his hand and he was presenting it to this victim, whereas the defendant said the gun was in his pocket the whole time he had on a peacoat or something? Yes. And he had the gun in his pocket the whole time. So there was a major conflict between the gun, about the gun, wasn't there?  Does that make the evidence, in your opinion, less than overwhelming, or does that help support the state's case when you have one person saying, the defendant, I had the gun in my pocket the whole time until I saw what I thought was his gun. And then you've got the other guy saying, he had the gun out, he was giving it to him. Their accounts were primarily consistent in that Jed said to Bowman that he was going to F him up, and then Jed is the one who pulled out the gun from his waistband and appeared to fire at her. And this was the only game in town for this defendant. He was the only witness who was there to give any kind of credence to his self-defense argument. Here, Williams was the only witness. Yes, Fred Williams. But his credibility was so critical here. And I believe the prosecutor realized this as well when he told the trial court that the defense doesn't have a right to clean up his witnesses. On the other hand, you can't reason geometrically from the Estelle case. In the Estelle case, I guess the Supreme Court, I'm not even sure of this, but I would think that the Supreme Court reversed based on the fact that he was not allowed to wear civilian clothes. But that, well, I see somebody shaking their head. Usually it's not something I encourage. But in this case, since I'm not sure, I do encourage it. I believe in Estelle there was no reversal because the defense hadn't objected, and so it was not a preserved error. But whatever that result is, the severity or the significance of the rights that were compromised in Estelle could not be transferred to the case where it's the witness rather than the defendant who is being forced to appear in prison uniform so that the necessity of a reversal is significantly mitigated when it's the witness rather than the defendant, even if the defendant were entitled to change into uniform. And a number of courts found otherwise. And it is very analogous because the visuals are there for the jury to see. And that's the impact that the court was concerned about in Estelle. Well, it's hard to conceive of a situation. I think one of those cases, it might even be Eitel, that said that if the jury was already informed that he was a prisoner... Which the jury was not. Yeah, but if the jury was informed that he was a prisoner, the fact that he then was forced to wear the uniform would be of little concern. It diminishes the prejudice from the constitutional... Well, then the reasoning that would follow there is that since the jury is entitled to be made aware of his residence in a prison... I don't think the jury is entitled to be made aware. Well, it is under effort. The prosecution is entitled to introduce the witness in the context of his environment, including his residence. And if that were the case, the differential between the jury knowing that he is a prisoner and the fact that they have a visual person confirming that fact seems to be generally close to a harmless error to start with. And the prosecutor realized that himself when he said the defense doesn't have a right to clean up the witnesses. Otherwise, the prosecution statement doesn't make any sense. The prosecutor himself realizes that this has an impact on the credibility that the jury will see. The question is, is it a reversible... Assuming that the right to appear without prison guard is there, is it a right that will justify a reversal where that right is not enforced? Yes, it does. Well, you would have to show that it would be outcome determinative, right? That it would be prejudicial and the state would have that burden, right? And if it's constitutional in nature, it would be a burden beyond a reasonable doubt that it's not prejudicial, but I don't see it as being constitutional yet. In any event, isn't it apparent, self-apparent, that the knowledge by the part of the jury that this is a prisoner and the kind of corroboration that they would get from seeing him in uniform is not great enough to make the difference in their decision? I would disagree. I would disagree. It does have an impact in this case, especially where this case was basically a credibility contest. Well, you're arguing that. You're arguing that. They argue it really wasn't because they say the evidence was overwhelming. They say the evidence was overwhelming, but they're saying... Well, if the evidence was overwhelming... Now, there can be a credibility question. Does that mean automatically the evidence is not overwhelming? Well, it sort of goes to the closely balanced analysis that we do for plain error, where you have witnesses who basically are providing testimony that isn't corroborated or contradicted by any external evidence. We call that closely balanced, and that's sort of what we have here, where we're essentially looking at the credibility... Yes, and my question to you is this. If it's simply because one witness says one thing and another witness says another thing, does that mean it's closely balanced? Well, where the case boils down to an issue of credibility, and the state here had no witnesses of their own really contradicting... Well, they did. They had the... Well, you're saying they didn't have a witness to contradict. Well, in terms of the entire incident that occurred, the only witnesses who viewed the whole incident... If that's the case, and I'm not trying to play gotcha with this, but if that's the case, if the prosecution would have the right to elicit the fact that he is a prisoner, and it's that significant, you're saying that it was malpractice not to do so. Malpractice on the part of the prosecution? I would disagree. I mean, it's up to the prosecutor what evidence they want to present. This has to go... Well, if it's that significant, then it should have been brought out in the first place. And now you're saying since the defendant was escaped the hazard by sheer good luck, he's entitled to keep the fruits of that by having the jury totally kept in the dark as to what his relationship to the penal system... And I would also point out that I'm not aware of any Illinois cases that have interpreted Alford, and the state certainly hasn't cited any. So I'm not sure if that's a matter... I believe that's a matter of federal rules. Could we move to this one? I wonder if we could move to this issue about the lynch material. Sure. Unless Justice Gordon has another question. No, I would challenge your attempt to insulate or isolate the Alford case. I know that in my evidence courses that I taught, I taught it as Illinois law, not as federal law. I'm not aware of any cases, and the state certainly hasn't cited any. So on that basis, that would be another ground to distinguish. Well, I'm going to switch. Let's hear it. Now, in your brief, you say that Bowman would be entitled to present competent evidence bearing on the issue of self-defense. Do you agree that in the first instance that the evidence that the defendant elicits must be competent? Yes. Now, do you agree that in order to inquire into reputation evidence, that there's a formula that's required? There is a formula that's required, yes. And would you also agree that in this case... Now, I'm setting aside the other issue about Figueroa and then the cases that you point out that indicate that if a defendant has the right to self-defense, that if that person injures someone accidentally in the exercise of that... Putting that issue aside. ...that they would be exonerated from that other accidental injury. Wait a minute. I'm sorry. I'm putting that aside. I want to hear about... You agree there's a formula for an offer of proof. You say in this case there was no requirement for an offer of proof. But you rely on Lynch and language there. But Lynch involved the introduction of three certified convictions. Did it not? Yes. All right. Now, what would be the formula? Well, I point out that in Lynch, the Supreme Court recognized that the defense was doing it somewhat in an unorthodox manner when they were doing it during the cross of state witness. Yes. Which is not the normal way you would bring that evidence in. But the Lynch court said that the point here was that the trial judge was not... was under the misapprehension that this was legally inadmissible. And so that's what we have here, where Judge Stewart seemed to believe that this was an issue that was not appropriate. Well, did she ever say that? Or did she simply sustain objections? Did she ever enunciate that this Lynch material is not before us because this was a bystander? She sustained... Oh, no, no, no, not as a bystander. Did she ever suggest that Lynch material would not be available? She sustained a number of general objections, which are treated as relevant objections on appeal. Okay. But is there any suggestion here that this judge did not understand Lynch? By her repeated... I mean, nothing from... By her repeated objections of sustaining objections to general questions? To general objections from the state. So the state objected generally without stating a basis, and she sustained. And on appeal, we treat those as relevant objections. Also, to the extent that the state is complaining about lack of foundation... What did the judge in the Lynch case do? I believe the judge... Did the judge say that this wasn't relevant? Isn't that how Lynch came about? Right. Right. Okay, so Lynch is there. But Lynch is a lot more generic in its dismissiveness of the requirement of an offer of proof. I have the language here in front of me. It says, furthermore, in this case, not only the reviewing courts... Only the reviewing courts need have to be considered, since further details would not have influenced the circuit court, given its view of the law. The requirement of an offer of proof is not a formalistic ritual, but innate to justice. Where justice is not served, no such requirement will be enforced. For example, no offer is required if there was no practical opportunity to make one because of the trial court's hostility. But at any rate, it's kind of a tenuous basis to forego the failure to introduce evidence of the victim, in this case, the intended victim's propensity, simply because there was no formal offer of proof, when everyone would know what the answer is going to be if the question was asked in attempting to make the offer. And if you look at both... I mean, that's a softball for you, obviously, but I want your opponent to consider it. Right. And so, as to Justice McBride's question about, you know, foundation and total general exception, if we look at Barbara Walsh's testimony... Maybe that's the only one you've got something to hang your head. But it's part of, I mean, a pattern. The table's for each one. Right. And it's part of a pattern here. I think that Walsh, there was an attempt to elicit something that one could discern, an aim at reputation. But I don't see that in any of the other inquiries. If you look at Deja Hamilton, defense counsel asked if he's said as a pretty aggressive or violent guy, the state's odds of a general rejection... And is that sustainable or not? Nine out of ten judges are going to sustain that objection. But when the state doesn't say foundation and when the judge doesn't say foundation is the basis... There's no requirement for that. That question alone is improper in form. There's no question about it. But it's incumbent on the state and the judge to say... No, actually, at that point, then, it's incumbent upon the lawyer for the benefit of us to be able to review it and for the benefit of the defendant so that the court can correct an error to make that offer of proof. That's why the offer of proof is required. First, so the court can be told, judge, you know what? I think you're wrong. This is why. This is what the witness would say. And let me make this offer of proof. So then the judge can either buy it and correct him or herself. And then, if not, later, we can review it and say, this is what the person was trying to do. The objection should not have been sustained. The defendant should have been allowed to proceed so that... So that's the reason for the offer of proof. Correct. And we would ask this court to look at the issue sort of as a whole. The way that Judge Stewart, every time the judge's name comes up, practically, she's shutting the entire issue down. And if the problem really were one of foundation, if that really were the problem, then in Barbara Walsh's testimony, the judge would have allowed the... But, you know, I mean, 9 out of 10 judges, 9 out of 10 lawyers are going to see that that question is formed. It's completely objectionable. It's completely objectionable from its form. Right, and to be honest, there are a lot of... But for purposes of appeal, the state needs to say, if foundation is their problem, then they need to state that to the trial judge and give the defendant an opportunity to correct it. No, the offer of proof has to come from the other side. The proponent of the question has to explain why they want to put something in so that the court can either correct it or not, and then we can properly review it. And the other point is that with Walsh and Hamilton, we're talking about cross-examination here. And so defense counsel, anybody doing cross-examination is given wide latitude to explore issues in cross-examination. And courts have held, in other cases, that the offer of proof requirement is relaxed, where you're dealing with someone on cross-examination who's not exactly going to be forthcoming. What case says that the offer of proof is relaxed when it's on cross? I'm not aware of that one. I believe it's in the reply brief. Okay, all right. But that's sort of what we're dealing with with respect to Hamilton. All right. Well, let's talk about the Lynch material. Now, you have cited a number of cases in your reply brief in response to the state's suggestion that Figueroa doesn't permit the extension of Lynch in a case where the victim is an innocent bystander. Correct. And that the Figueroa decision is from the first district. Correct. And it's based on a decision. Well, one of the reasons it cites is another case, Bridges. Right. So, I mean, how do you... First, I would argue that Figueroa fundamentally misinterprets Lynch, the Illinois Supreme Court decision that we have to look to first. The essence of Lynch is not who was injured, but the defendant's right to present evidence of self-defense. And so, where you have transferred intent... Well, you know, let's stop there for a minute, then. Simply applying the logic of Lynch with regard to a defendant's right to introduce Lynch material where the actual victim was his putative aggressor to a situation where the actual victim was an innocent bystander, but only the intended victim was the putative aggressor, can be, I think, exaggerated. The relevance of one to the other can be exaggerated. On the surface, the logic seems very compelling, that the same reasons that apply to one should apply to the other, particularly with the notion that had the defendant been trying to protect himself from his putative aggressor and because of that accidentally shot a bystander, he wouldn't be condemned through the doctrine of transferred intent to murder of the innocent bystander, but on the contrary, the doctrine of transferred intent would work in the opposite direction, where that murder of the killing of the bystander would be attributable to his justifiable homicide intentions, although he might obviously have been convicted for reckless homicide in this case. Perhaps, at least that's something that would still have to be considered. But that logic is nevertheless limited because the whole doctrine of the Lynch defense runs contrary to conventional evidence law. Because Lynch allows reputation evidence and perhaps even aggressive acts to be used to establish propensity, something that is never permitted under conventional evidence law. You cannot use someone's reputation to establish propensity. You can only use reputation to establish credibility. So that the break that one gets in a justifiable homicide case against one's victim, where the victim is the aggressor, doesn't necessarily have to apply. Where an innocent bystander is shot and the intended victim is unscathed, there's no reason to think that the rules of evidence aren't designed to stretch from the one to the other. That is actually the reasoning in Figueroa. My response would be that the evidence rules don't have to stretch at all. The transferred intent doctrine applies to convict the defendant and acquit the defendant. And in either circumstance, the defendant has a right to present the evidence of self-defense. And so to the extent that Lynch might be an aberration from the common law or whatnot, Lynch has been the rule for almost 30 years. And so the defendant should be entitled to present evidence under Lynch that would bear on the issue of self-defense. Again, if transferred intent convicts and acquits, it goes both ways. But that little wrinkle may be enough to foreclose the extension of reputation evidence from an actual victim to extend as well to a putative intended victim. And that would be certainly contrary to the reasoning of Lynch. I mean, the door may not just open that wide. Well, following Lynch, I mean, the plain language of Lynch makes no distinction whatsoever on that basis. Well, Lynch wasn't really about an innocent bystander. It was about a particular victim. In that case, the particular victim had three convictions for aggravated battery or battery. But the court made it very clear that it pertained to issues of self-defense and determining who the aggressor was. Yeah, but the aggressor was the victim in that case. Or at least that was the argument. No, well, the aggressor and the victim happen to be the same person. But for the purposes of evidentiary law, it's determining who the aggressor is in a certain situation. But even in the common law, this notion about self-defense wouldn't necessarily exonerate someone who shot at one person and was acting in self-defense. Would that necessarily mean that they couldn't be found guilty of recklessly injuring someone else? Acting reckless would be one thing, but self-defense, I believe, would still apply. My question is, if you can be found guilty of acting recklessly while you're exercising self-defense, then the common law wasn't this perfect rule that says you're automatically exonerated if you're acting in self-defense. But I think the issue now is crystal clear. Bowman was given a self-defense instruction. The jury, excuse me, was given self-defense instruction. And had it found that he was defending himself, he would have been completely acquitted. I think there is still a considerable basis to assume that the logic of the one does apply to the other. That if you're going to consider the defendant's state of mind as to whether he believes himself to have reason to fear the conduct of the supposed victim, as well as the second function of the reputation evidence, which is to establish the propensity of the victim, which doesn't require knowledge on the part of the defendant, that that same reasoning should also apply where it's a misfire, where he tries to kill the one but kills the other. One would think that there should be no distinction other than the one that I just formulated, which is to say we're only opening a very narrow door here and we're closing it. But, you know, it's hard for us to simply act that dogmatically and say, we're only, since the rule applies to a victim, this victim is not an aggressor, therefore the rule doesn't apply even though that distorts the whole picture, which is that he wasn't shooting at this victim, at least according to his assertion of self-defense, but he was shooting at somebody who he really thought was going to injure him or kill him. It doesn't require any sort of dogmatic ruling from this court. It simply requires following Lynch and its plain language. Now, Lynch talks about the plain language of Lynch is that you're entitled to present that package of defenses against the victim. That doesn't make sense here because the victim is an 11-year-old girl. But it wouldn't make sense if he could be acquitted of self-defense. It makes no sense to prohibit him from presenting competent evidence regarding his self-defense claims to determine who the aggressor is. Not the Hamilton girl. The Hamilton girl is the victim. In this case, it's against the knife. Correct. Or who is not a victim. So Lynch on its face is not designed to apply here. Only its logic could be borrowed to apply to a variant where the victim is really irrelevant. It's the intended victim who is really the... And who is the object of the self-defense claim, which is what we're asking for here. That he be allowed to present evidence... You know, one of the things that you've responded to in your reply brief is the plain air issues that the state raised. And they basically say that the motion for the new trial did not allege that the defendant was precluded from presenting self-defense. The motion itself. And the state goes through each of these complaints of error and points out how there wasn't an error. Because, first of all, there's no foundation. There's no offer of proof. And the statements alone don't really tell the reader or the appellate court what the actual, you know, evidence was being presented for. In your reply, you say that this was argued at the motion for a new trial. So the state has forfeited any right to claim forfeiture because they let the lawyer argue. But then, at that time, did the lawyer argue that the objections that were sustained precluded the defendant from presenting valid Lynch material? Or was there some generic argument? He said that he was trying to present evidence under Lynch. At the beginning of the oral motion, and then, I think at the very beginning, that was one of his first points, I think. And then later on, when he goes through a number of these questions, he again says that that was relevant Lynch material. Okay. Now, what about the requirement under the plain error doctrine that an objection be made and that the motion for the new trial contain this? Was there – doesn't the defendant have to tell the trial judge at that time what he's trying to do? At the motion for new trial? No, no. Don't you have to make an objection, a timely objection, and a specific one, or point out what the error the court is making, and then also include it in your motion for a new trial? My understanding is that you have to bring the error to the court's attention and then raise it in the motion for a new trial. Okay. And so when it's an objection that's sustained during trial, that issue has been brought to the court's attention. What issue? What issue has been brought to the court's attention when the defendant's lawyer doesn't tell the court what's wrong with what the court's doing? I don't mean to repeat myself, but again, it's relevance where it's just a general objection. If you look at the rulings as a whole, Judge Stewart made it very clear that she thinks this was a relevant issue. But doesn't the lawyer have to say that to the judge? Doesn't the lawyer have to tell the judge, Judge, I'm trying to get this in under Lynch. I believe it's all relevant and material because we want to show that the victim had a reputation in the community for violence. And if you look at Judge, or excuse me, Deja Hamilton's testimony, I believe she was the very first witness. The defense counsel said in response to an objection, Judge, you know, she knows this. And Judge Stewart responds very personally by ruling it to stand. She knows what? If she knows his reputation, defense counsel does respond in that very first instance. And Judge Stewart says simply, my ruling is to stand. And it goes to a point that defense counsel makes later in the motion for your trial. Well, is that the only time you've said something? I mean, are we going to, do we lump these all together or do we have to look at the record and determine whether each one was properly preserved? Well, I think about eight of them. The point here is that he was denied his right to present a full and fair self-defense claim. There's a variety of evidence about Judge that was relevant. Bowman's own experiences, the reputation evidence, the course of investigation. Is this one of those structural errors that the court has sort of talked about in terms of, for the purposes of plain error review, there's been some suggestion that we compare those to basic structural errors. Is that one of the six they consider? I don't believe so. I think it is sort of like structural error in that it's infringing on the right to present a defense. I'm not saying it is. I'm saying that there are opinions now that suggest that under the plain error doubt, or not whether it's close to doubt, but whether there was such a fundamental error that occurred that it doesn't matter what the evidence was because that error flawed the trial so that the defendant did not receive a fair trial. That was the traditional language used. Now there are some Supreme Court opinions that talk about when we're doing this that we're really talking about structural errors. My question to you is there's a handful of those. Is one of them the right to present a defense? I just can't recall offhand. I can't recall offhand either. All right. Our point, we do think that there's sufficient prejudice that we don't need to rule on whether it's a structural error. So what about, I just have one more question. What about the inherent implausibility of the self-defense defense? We have a defense that asks us, asks the jury to believe that the defendant was basically a social worker, that he was trying to protect the children in the community from having weapons, guns in their hands, and he was blaming Knight for distributing these guns. And so he took the gun with the idea that he was going to return it tonight. And so he packs this gun where he can access it, or according to Williams, he has it out already. And he's going to Knight, and he's lecturing him about distributing guns to children and the necessity to keep these children gun-free. Aren't we talking about a gangbanger here? No, I don't think so. There's any evidence of gang activity on Bowman's part, that is. No. And to the extent that you... Well, he has two convictions, and that impacts his credibility. It doesn't impact anything else. We know that. But the jury rejected that theory because they found him guilty. In fact, it looks like they completely rejected it because they found him not guilty of attempt murder of the little girl, but they found him guilty of aggravated battery of a child under 14 or 12, whatever. And was there also an aggravated battery with a firearm charge? Yes. Okay. So didn't the jury kind of sift through it all, and basically they found that, you know what, he wasn't trying to kill her, he was trying to kill the other guy. But the charge was against her, because there was no charge against the guy with the gun. Okay? He wasn't charged with that because he was not proceeding, and Dave wasn't proceeding. But do you see what I'm saying? The jury rejected self-defense. They rejected it because they concluded that he did commit aggravated battery. That's not a reckless act. That's a knowing act. But they rejected the idea that he was out there to kill her. He wasn't because attempt murder is specific. And so what is so critical here is that Bonin was not given the chance to present a story that is inherently implausible. That's what I'm getting to. That it's harmless error to have encumbered the opportunity to fully flesh it out and present it. One, it is inherent in nature. It's unbelievable. To the extent that anyone might find this implausible. I disagree that it's implausible, but to the extent. Well, here's the view of it being implausible. And that is that this guy is going to return a gun to someone that he says is trying to recruit young people to be involved in gangs. So he's going to go back and give him the gun so he can use it against some other innocent? I mean, that's what Justice Gordon is referring to as the impossibility. That's right. He doesn't go to the police. He doesn't say, this gun was from so-and-so and he gave it to so-and-so because he wants him to join the gang. That's what the jury thinks that a person who's trying to help is going to do. They're not going to go back and give it to the guy so he can use it on somebody else. That's why, a couple of responses, if I may. That's why Pierre William's testimony was so critical here. He was an independent witness who corroborated largely William's testimony. An independent witness walking casually in harm's way with the bad guy, in this case, right? Who turned out to be the arrestor. Right. And then the other... But don't we have the defendant's testimony that this bad guy is the one who shot, you know, a statement that he made, that the bad guy is the one who shot him the week before? There's a vague, ambiguous statement that he shot before. He gave a gun to the guy that shot him last week. I mean, the question is how far we can go in protecting the technical outlines of the rule with regard to a fabricated defense. I don't think there's any evidence that this was fabricated. And, again... Well, the question doesn't have to say. It's the jury decides whether it's implausible or fabricated. Well, I think they rejected his... The jury didn't get to hear his full self-defense claim. Bowman tried to show that this was the second incident with him and Knighton on that. That objection was sustained. Bowman could never fully explain his self-defense claim. So if it's implausible, it's only... But didn't the jury hear really everything? They heard about that this other guy had a gun. They heard about it from the defendant and they heard about it from the witness, except the way it happened was completely different. So the jury has two witnesses giving completely conflicting versions. So that sort of corrupts them to begin with in terms of the weight to be given to their testimony. But either way, the jury heard the other guy had a gun. They heard it from two different people. And so they had what they needed. Now, the problem we have here is that we really don't know, on this record, what this person's reputation is because no one has told us that in any single offer of proof. So you say he was prevented from doing it, but we don't have anyone making an offer of proof with the correct foundation and confidence evidence that this other gentleman had a reputation in the community. And that's all we're getting at. We don't have any convictions like there were in Lynch. True? True. We have whether or not he had a reputation for what? Violence. But there's nothing in this record that gives us back what we need. And again, I think that Bowman started to testify to that. So you have Bowman's testimony that was objected to. But what did he tell us? Well, he tried to say he was a stick-up man. What does that mean? He said he was going to F him up. What does that mean? Are we entitled to something? And Bowman should have been allowed to explain that further, and he was prevented from doing so. What happens to the rules of evidence and whether or not somebody puts in reputation evidence in a comprehensive manner? Are we throwing them out? So the point here, as I said before, is that this is a pattern of ruling. Yes. So we shouldn't look at them individually, but look at them as a whole to show that Judge Stewart really did not think that this was a relevant issue for the jury. All right. But don't you think that we do have to have someone say, Judge, if this witness were to testify, he or she would say that, I forget, Jesse, Jed Knight has a reputation in the community for violence. And it's based on individuals who have familiarized themselves with his reputation by speaking to others and hearing from others. Not about specific acts or anything like that, but they have heard this in the community, being familiar with the community, and being familiar with him in the community, and that in the community, they don't have to live there. I mean, the general notion is basically that someone had an opinion that he has a reputation for violence in the community. But don't we have to have somebody tell us that instead of these things like, you know, he's known as a stick-up man, or he said he was going to F me up, and then the other guy said that means hurt me. I mean, what happened to the rules of evidence? Our position is that there's enough here for this court to find prejudice. And so that's really what the issue is. Between the cross-examination that was restricted, between Bowman's own testimony, between that. The question is, as well, how far we can consider the degree of plausibility of the defense itself in determining how close the evidence. Well, I'd like an answer to that, because it's a technical question. It is. And this is not testimony that's so incredibly implausible. Well, does the degree of the plausibility of the defense enter into the equation of determining the closeness of the evidence? It can. In this case, there's nothing so implausible about it that it should be outright rejected. And to the extent that it might be... Well, I'm not bottom-lining how plausible it is, but I'm devil's advocating that it's not terribly plausible. And if it were not plausible, does that become a factor in determining whether the error, if there was one, was outcome-determined? It could be a factor, to answer your question. But where there's nothing, no physical evidence, no other evidence besides testimony here, two witnesses testifying to self-defense, both of whom had improper restrictions on their testimony, that plays into the level of plausibility. And so if they had been able to present Pierre Williams' testimony without the jail attire, if they had been able to present Bowman's testimony about the prior experiences with Jay, those sorts of things would have made it more plausible. And that's what we're arguing about here. Is there anything else? No. Thank you for allowing me to go. We took up a lot of the time, so notwithstanding, you'll get a chance every vote. Thank you. Your Honor, my name is Ashley Jacobs. With regards to the jail garb issue, the precise reasoning that there is the right of a defendant against being compelled to appear in jail garb is due to his unique status as a defendant, that he is quoting a presumption. However, the majority, apparently, you haven't denied the fact, and there is some significant indication that the majority of the states seem to buy into the notion that a witness is entitled to the same insulation as a defendant is, that the Estelle reasoning would also apply to witnesses. Let me address the majority of the states. One state, Hightower v. State, overruled itself. It went with the original, it originally found the exact opposite. It originally agreed that because a defendant is close and the presumption is innocent, which a witness is not, that the Estelle rule does not apply to witnesses, and it looked at five, five other states, and said five other states have said this way, so we'll overrule ourselves. I would not say five. It's an overwhelming amount of states. And I have cited cases. I think the defense states more than five states. They cite exactly Hightower plus those five cases, six cases. And I've cited several cases. This has not been, this is an issue that has not been considered by a majority of the states. It's considered by a very few amount of states. And the reasoning as the... But in this case, didn't the trial judge say she was going to let him go into his regular clothes, and then later in the day, the state objected, and then she changed her mind. She had already said she was going to let him come out in regular clothing. She did. That's correct. And the state's objection was, no, we want the jury to see who he is. Well, it is a truth-seeking process, and he does not have this right. While you have those rights through your examination of witnesses, a formal presentation of evidence, the question is, do you have those rights through the casual fact that someone is dressed in a certain way? The witness does not stand in the same unique position as the defendant. The right does not apply to the witness. Defendants are not entitled to a presumption that their witnesses are innocent, just that they are innocent. But presumption is only one reason. And that's a reason that is specific to a defendant. But there are other reasons also which guide the courts in determining whether he should be allowed to testify as a civilian, namely of a glaring perception that a jury gets of the fact that they're hearing things, hearing testimony from the mouth of a prison inmate. As I stated, this is a truth-seeking process. What was the reasoning of the other five cases that said that the witness should be allowed to appear in regular clothing? Was it bottomed on the Constitution, or was it bottomed on some notion of fairness? One of the cases had no analysis whatsoever. Isn't that kind of like the case that we had? It is true. No analysis whatsoever? The other reasoning was that they felt that Excel should be extended. We also left out the American Bar Association advocating, too, that witnesses be given the same rights as defendants. Simply put, it is precisely because a witness and a defendant are not situated similarly, that, for example, you are allowed to ask a witness on stand about his prior conviction. You are not allowed to ask a defendant on the stand precisely because it's considered too damaging and prejudicial for a jury to hear the defendant's testimony about his defense at the same time as he's hearing. It says you're not allowed to ask a defendant about his prior convictions. Case law. Case law says that you can't impeach a witness, even when he's a defendant, through prior convictions. Not directly while he's on the stand. Right. You do it, but you don't argue. That's exactly it. That's very analogous to this situation, whereas you're allowed to enter it in rebuttal, the reasoning that you're not allowed to directly ask a defendant on the stand. It's because it's considered too damaging and prejudicial at that time, just like a defendant in jail guard is considered a constant reminder of the accused's condition. I misused, I misspoke when I said the rights of the witness because I think the ramifications of that is now coming home to roost in your argument. It's not the right of the witness not to wear a prison guard. It's the right of the defendant to have his witness not wear prison guards. It is the defendant's right that we're talking about. And there is neither federally nor in Illinois any such right for the defendant to turn around a right that he has where he is not allowed to be compelled to wear jail guard, that now he can compel other people to do other things besides simply testify on his behalf. No, that reasoning is up a tree, if you pardon my expression here, because that presumes that the person being protected is the victim, the innocent victim, rather than the intended victim. The only time that that argument flies is if you would say that the intended, that the actual victim has a right to be shot simply when you're asserting a right of self-defense against the defendant. And the fact of the matter is that the rule, the doctrine of transferred intent does cover that situation. The rule of transferred intent would exonerate a defendant from the murder of an innocent victim where he's being attacked by someone against whom he's trying to protect himself. It's a dramatic and unfortunate ramification. But in terms of the justice of it, the fact that if someone is coming at you with a gun and you fire the gun to protect your own life and the bullet ricochets and hits a third party, you are not going to be convicted of the murder of a third party if you're engaged in legitimate self-defense. My point about extending his argument, for him to say how somebody should dress on the stand, if he has a drug user on the stand, is he allowed to say, and there's track marks on the arm, is he allowed to say, I want this person wearing long sleeves? Is he going to be allowed to say, I want policemen not to testify in this case? Is he going to be allowed to say, I'm sorry? In this case, he's not trying to compel the witnesses. The witness is not resisting anything. He's trying to present his case through a witness who is not viewed by the jury in a jaundiced way. And the state is saying, we don't want you to have a clear witness. We want you to have a jaundiced view. So how is this right affected by that? He's not allowed to? He has no right to dictate to the court how his witnesses should dress. He has no right. The state doesn't have to. The witness is not resisting here. The prosecution is resisting. Agreed. The witness is wanted to put on civil clothes from everything that's seen here. The question is, does the state have the right to avail itself of some serendipity? And there's no sin in availing yourself of serendipity. But it is serendipity of having a witness whose demeanor or physiognomy or physical characteristics in some way besmirches that witness, even though the besmirchment is through some physical appearance rather than through the testimony that is elicited from that witness. He simply – the state does not have a right to dictate how their prisoner witnesses dress. As you indicated, as was discussed before, some of the cases, even that the defendant has cited, deal with state witnesses, where the defendant feels that he would like a state witness to be dressed in civilian garb. We don't know if he – is there a prohibition on this notion of inquiring into someone's pending charges? There is a prohibition, and it was exercised in this case. Okay, so doesn't this sort of fly in the face of that whole notion that here's this fellow who's in jail? So right off the bat, we're suggesting he has a pending charge, even though that's not something you could generally inquire into. Well, but in this case, that goes to harm and terror, because he has the first words out of his mouth in this case. But it does fly in the face of that notion, doesn't it? You can't inquire into somebody's pending charge, but you can parade him up there and let everybody know that, obviously, he's got a pending charge because he's over in the jail. But I understand your argument, and I also understand that you have this backup that is harmless there. So I think – and you say because the evidence is overwhelming. Now, let's talk about the other issue, because we do have another case. And the other issue is what Justice Gordon was starting to allude to, that you cite Figueroa, and that's based on bridges. But there is this long line of Illinois authority that says that if you are exercising your right to self-defense, and in that proper exercise of that right, you injure another party, that the transferred intent doctrine allows you to be exonerated from that accidental killing, shooting in this case, of that child. First, let me say a couple of things about Figueroa. Figueroa – the issue in this case is whether or not the trial judge abused her discretion, and clearly Figueroa is the state of the law at this time. Well, I don't know about that, because Figueroa doesn't discuss the long line of authority that says when you are in the exercise of your absolute right to self-defense and you accidentally kill someone, that person was the bystander in all those cases. That was the whole point of it. The transferred intent works both ways. Now, Figueroa doesn't see – Figueroa was bottomed on many things, the first of which was that the self-defense was not a self-defense at all in that case. This is like an alternative basis to affirm, but it does ignore the common law and the number of cases in Illinois that tell us that the transferred intent works both ways. The defendant cited three cases in his reply brief, and neither – none of those three cases say that. None of those cases say what? They say that a person who is a putative aggressor, who is not a charged victim in the case, you can put in evidence of his reputation. People v. Polk, the person that the defendant was trying to get in reputation evidence against, was actually a named – Let's stop you right there for a moment. Regardless of what those cases say, why shouldn't he be able to put in the same defense against his intended victim as he would against the person turning out to be his actual victim? In other words, if you're shooting at somebody because he's trying to shoot at you, you could put in the lynch defense. If you're shooting at someone because he's trying to shoot at you, and you hit a third party, which would exonerate you from the murder of that third party, because you're engaged in self-defense, you can't put in the lynch defense to corroborate your assertion of self-defense, that you were in fear of that victim at that moment. What is the logic for saying that it applies to one and not the other? Well, as Your Honor stated earlier – Only one sling read. As Your Honor stated earlier, it's a sling read that I wholeheartedly agree with. This is an unconventional use of evidence, traditional evidence that you can actually – Why do you say it's unconventional? What do you mean? What's unconventional? To be able to use propensity, to be able to use reputation for violence, for propensity for showing violence. But let's face it, lynch is here, it's alive, it's well. Yes. So it is unconventional. But what difference – I mean, the question that Judge Gordon asked you was, why shouldn't the defendant be allowed to present that defense in its fullest? Well, let me address – in order to answer your question, I'm going to address your earlier question as well. For instance, in People v. Poe, the victim that the defendant was trying to get in reputation evidence against actually was named a victim in that case of an attempt murder. He was a named victim. It was not a random person. It was a named victim. And in People v. WD, the person they were trying to get in reputation evidence – I'm sorry, in People v. WD, they were not trying to get in any reputation evidence or any previous incidents. They were trying to just get in actual things that that person did during the course of the actual crime. Because that person was holding a bottle over the person's head. So that's not even a lynch. If you're attempting, as the Figueroa case is, to somehow implant some magic in the term victim, Mr. Knight is a victim. He's a victim of an attempted murder or of an assault. He's not a charged victim. The defendant is not a charged victim. If you're putting magic into words, it doesn't say charged victim. It just says victim. He's only a victim according to the defense. He's certainly not a charged victim. Oh, he definitely is. So at the end of it, if the defense is something that the state thinks is ridiculous or implausible, or is the issue here whether or not the defendant should be allowed to present that defense? I'm so happy that you asked that question. Let me be very clear. The judge never, ever made any kind of widespread ruling that she's not allowed to lynch anyone. I understand that, but I'm familiar with the record. And that's why I ask those questions of the defense attorney, that there's never even a... He doesn't even bring up the case. Now my question to you is whether or not it should be allowed based on what someone's opinion is of it, or whether the defendant should be allowed to present the defense that he's entitled to do. He has the right to present his defense. He has that right. And he has to follow the rules of evidence in order to present it. Okay, but that's not my question. I directed the question about the rules of evidence to him. My question to you is, should he be allowed to fully present this defense of self-defense? Because that's his right, and does it depend on how good it is, or does it depend on the fact that he's entitled to present the defense here? The defense was self-defense. Are we looking at the quality of the evidence, or are we looking at whether or not he has the right to put in completely and fully and explain to the jury everything that he thinks he has? I'm not saying whether her rulings were... I'm not talking about whether he preserved it right now. I'm asking you, should he have that right? Of course he should have a right. Well, Figueroa is taking that away by saying it doesn't apply to anybody. Figueroa is taking away that right when it says, we're not going to expand this to innocent bystanders, which in Bridges wasn't basing it on any authority whatsoever. Bridges actually works against the state and for the defense. The Bridges case is what Figueroa relies on. Bridges is the old case from, I guess, what was it? 1989. 1989. Bridges relies on two cases, People v. Dismook and People v. Shorter. Guess what those cases involve? Those cases involve defendants, actual victims, not innocent victims. I'm talking about the... No, but Sledge relies on two old cases that involve the application of the law to the actual defendant in the case, to a defendant's right not to wear a prison uniform. And it misstates the law in those cases. In those cases, defendants were denied the right to change from their prison uniforms, and the court held it was okay.  But Sledge, in finding its support, makes no distinction between the right of a defendant to wear civilian garb and the right of a witness to wear civilian garb. So in effect, Sledge identifies the rights of witnesses with the rights of the defendant and misstates the laws of the both. So that would indicate that at least Sledge, to the extent that they were on the right track, analogized the witness to the defendant. Let me just say, as far as the lynch incident... It helps to read those cases when you see them in the fine print. Absolutely. Let me just very earnestly point out that the name of the case, People v. Lynch, wasn't even mentioned to the judge until every last piece of evidence was in. Until the end of the trial, just before closing arguments, is the first time the defendant mentioned Lynch and offered a copy of the case to the judge, simply because the ASA brought it up. During all of the rulings, every single last ruling that she made, the defendant never even mentioned. By the way, this is lynch evidence. It's not even just a lack of author proof about what that lynch evidence would be. He didn't even bring to the trial court's attention that this is potential lynch evidence he was trying to get out, that she could even consider that. And as this court well knows, it can affirm on any grounds that are supported by the record. There are numerous grounds on every single ruling that she made that we don't even have to go to Lynch. We don't even have to go to Figueroa. Defendant never asked the question, and I wanted to address what you said about Barbara Walsh's testimony. That is the testimony that he got closest. He did ask some of the foundational questions, but he never asked the final couple, which were, do you know neighbors and associates of Jed? Have you ever spoken to them? Have you discussed his reputation? What is his reputation? Well, there was no—I mean, you can correct me if you think you can't, but I don't think there was an objectionable question asked of Mrs. Walsh. And all of it was let in. Here's what was let in. Well, I thought she kept sustaining every objection. And that is a fallacy. She let in lots of lynch questions and answers. The first question, do you know this individual Jed? Yes, I know him. The very next question, do you know him for carrying guns in the neighborhood? Okay, we jumped the gun here. So that was objection sustained. And then she asked, does Jed have a good reputation in the neighborhood? Again, hasn't laid the foundation yet. So then he goes back. Where do you know Jed from? LeClaire Court. That was allowed. Now he's laying the foundation. That was allowed. It was also allowed, how often would you say you saw him? Almost every day. We're getting closer. Then he needed to ask her, do you know his neighbors and associates? Do you speak to them? Because it's not her personal opinion of Jed's reputation. What did he ask next? He stopped. He inexplicably stopped that line of questioning and moved on. And let me also point out. The court had earlier sustained the objection to the reputation for violence or something? Because the foundation had been laid. Once he had pulled, he just inexplicably stopped. But she was letting those answers in when they were appropriate questions and answers. I mean, a lot of the questions that were. Okay, so that was where he stopped asking the questions. He did stop asking the questions. It was obvious what he was trying to do at that point, wouldn't you say? Bring out information about his reputation for violence in the community. And he got almost there and stopped. And nobody stopped him. He could have asked the final question. You didn't answer my question about this other thing regarding Figueroa versus the line of cases that. Oh, I was. Permit you to present a defense. Now, does it matter what the quality of the defense is? Is the trial judge up there or sitting there trying to decide the quality of the evidence? Or is the inquiry whether the defendant should be allowed to pursue the defense? No, and the defendant was allowed to pursue his defense. I want to be very clear. He got his defense out. He got out that Jack, this was the second time that Jack was given a gun. Well, that's why I don't agree with Figueroa. Figueroa is basically saying that we're not going to extend the ability to present your defense of self-defense when it comes to an innocent bystander. Well, and the bottom line here is, the issue is, did she abuse her discretion? And we don't have to answer that answer in this case, period. We don't even get to it. But perhaps we want to. We may want to answer whether or not. And the defendant has suggested that it was error in not to allow this lynch evidence. Now, you respond that it wasn't ever adequately presented. You said that this was not preserved. But the question is, do we follow Figueroa and say that it doesn't extend to bystanders, and therefore there really isn't anything to really go forward on to discuss? Or do we conclude that when Figueroa says we're not extending it to bystanders, do we agree with that? Or does that opinion prevent a defendant from presenting lynch material fully, because he wants to inquire into that person's reputation? I mean, I understand that, you know, there's an argument by the state that this record wasn't developed. No offer of proof was made. Now, counsel for the defendant argues that there was, and that this was what he was trying to do. And we certainly know he was trying to do it with Ms. Walsh. But the question is, you say, well, we don't need to reach that. That's true. We don't need to reach it. But in general, this issue is here, and the defendant says the court erred in not allowing this presentation of a full defense. So Figueroa basically says, hey, you don't get to do this. You don't get to put in lynch material if it's a bystander. But that decision doesn't really account for the notion that transferred intent applies both ways, and that if you are exercising your absolute right to self-defense, that if you have that right, and you accidentally or, you know, you accidentally kill someone else, you're exonerated. Defendant is bulking all of these rulings together as lynch evidence. But this court needs to consider that while it was happening during the course of the trial, there was no indication that, other than the Barbara Walsh one, that this was lynch evidence, that it was, there was absolutely no evidence that this was a concerted effort on this trial court's part to keep out lynch evidence. She was trying to follow rules. There was no mention of the word lynch. Okay. And so after the trial was over. It was hypothetical. Had she precluded this? Had the proper foundations been laid? Had the lawyer asked questions to explore his reputation in the community for violence? Would she have erred in not allowing him to do that, to use the lynch material? She could not possibly have abused her discretion, because the law in this district is, Figueroa, which is on all fours with this case. Figueroa, like I just said, seems to have not flushed out what these other cases were. But the issue in the case is abuse of discretion. And she can't be found to have abused her discretion. Well, I don't know how to use discretion when you're deciding the issue, whether the defendant was allowed to present his defense. I'm not sure the standard review here is. She was not deciding that issue. She was deciding individual events. You're posing a problem, a question that warrants, I think, some looking into. In that, if a trial judge is required to follow the rule of the cases decided by the appellate court, if a case is the only case in town and it's wrong, presumably the trial judge still has to apply it under the rules. But we're not precluded from our own decision, which would take on the erroneous case. And if we should decide that the law postured under the earlier case is incorrect, at that point, do we have a right to reverse the trial judge if it's reversible error otherwise, simply because the judge was doing the only thing that judge was authorized to do? I know from personal experience that it happened to me when I was a trial judge. And I said, I'm bound to follow the law of this particular or the fourth district at the time. But I think the law is wrong, and you'll have a right to correct that when you take it up. And I avoided the abuse of discretion. The epilogue at that point was that the appellate court did reverse me. The only beef I ever had was it didn't say I asked for it. But that would be the resolution. I don't believe you can reverse this case because there's no evidence on the record that she made a concerted effort to keep this lynched evidence out and that she was following that law when she did so. But she was making individual rulings on questions that were either non-responsive or there was no foundation, and there's no evidence. I cited the case of Figueroa basically for this court to say, and even if you think that all those rulings were individually incorrect based on their own circumstances, this court should know that this is the law of this court, and it could sustain on anything supported by the record, and you could use Figueroa because that is the law to affirm her rulings. But we don't even need to get there because she never said, I'm not letting in the lynched evidence. He made no motion to eliminate. I want to get all this lynched evidence in. He never mentions the word lynch until the end of trial, until all the evidence is, and by the way, he didn't bring it up. The ASA brought up the word lynch for the first time in this entire trial, right before closing arguments. She said, I want to make a motion to eliminate that defendants never laid the foundation for judge reputation evidence to come into evidence, and I just want to make sure that the defendant is not going to argue something that did not come into admission. The ASA brought up the word lynch. That's the first time it was brought up. This trial court had no, was never, ever alerted to what the defendant's defense was on each one of these individual things that this particular one had to do with lynch. And I mean, let me just say that like in the first ruling, I think we might refer you to the clerk at this point. I think we still have, we're holding on to the ambition of ending this, your argument, before the noon hour. If you have anything else to say, why don't you wrap it up, and we'll promise you safe conduct if you want to take a minute to complete your presentation. I think that most everything I had to say in some way has been said, and I'm just asking you to affirm the defendant's conviction. Thank you. Thank you. And you can take whatever might be left before noon for your rebuttal. I hope it's not offering you too much. Again, thank you for allowing this argument to go way over time. Just a couple of brief points. The state's attorney faults the defense attorney and the judge for not bringing up the word lynch. Well, first of all, the judge is presumed to know the law, so the fact that the word lynch is uttered doesn't really mean much of anything. But also, not all of this evidence was lynch material as you think of it. Again, the argument is the right to present to defense. Bowman was, for instance, trying to get out evidence about the prior incident with him and Jay. That's not really lynch material as we think of it. And he was prevented from bringing that evidence in. So this goes beyond lynch, although lynch is much of it. It goes beyond that. But in point of fact, every incident in the presentation of the defense that involves the lynch issue was handled incorrectly by the defense. And would have required a judge basically becoming proactive and enlightening the defense counsel that he's lacking foundation. Well, I would point out, as I mentioned to Justice McBride, that in our reply brief, we cite People v. Killis, which is the case that talks about where this is on cross-examination, the requirement of offer and proof, offers of proof. It's not an offer of proof as such as an offer of proof that is needed, but it's not up to the judge to second guess where the defense is going. And as we talked about, again, with Barbara Walsh, that was the clearest, best attempt to lay a foundation for this evidence. We knew that Walsh knew Jeg, knew him from the neighborhood, and every time that defense counsel tried to probe this issue, he was prevented from doing so on general objection grounds, not on foundation grounds. But then didn't he kind of stop and drop the ball, so to speak? After four times? Maybe those are... I would say after four times. I see. Okay. Any further questions? Anything else? That would have been futile to present. Anything else? No. Thank you. Well argued and well briefed and will be taken under advisement.